UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
EDUARDO ORTIZ,                                          :

                   Plaintiff,                        :        <u>OPINION AND ORDER</u>

             -against-                              :
                                          17 Civ. 4274 (GWG)
COMMISSIONER OF SOCIAL SECURITY,                        :

                   Defendant.                       :
----------------------------------------------------------------x

GABRIEL W. GORENSTEIN, United States Magistrate Judge

     Plaintiff Eduardo Ortiz brings this action pursuant to 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security ("Commissioner") denying

his claim for disability benefits under the Social Security Act (the "Act"). Both parties have

moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For

the reasons stated below, Ortiz's motion is denied and the Commissioner's motion is granted.

I. <u>BACKGROUND</u>

    A. <u>Procedural History</u>

     Ortiz applied for Disability Insurance benefits on January 24, 2014, and Supplemental

Security Income on January 31, 2014. <u>See</u> Certified Administrative Record, filed Nov. 27, 2017

(Docket # 15) ("R."), 21. The Social Security Administration ("SSA") denied Ortiz's

applications and Ortiz sought review by an Administrative Law Judge ("ALJ"). R. 58-77, 96-97.

A hearing was held on November 30, 2015, at which Ortiz and his attorney appeared. R. 33-57.

---

    [1] <u>See</u> Commissioner's Notice of Motion, filed Nov. 27, 2017 (Docket # 13);
Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings,
filed Nov. 27, 2017 (Docket # 14) ("Def. Mem."); Notice of Cross Motion, filed Dec. 27, 2017
(Docket # 16); Plaintiff's Cross Motion for Judgment on the Pleadings with Supporting
Memorandum, filed Dec. 27, 2017 (Docket # 17) ("Pl. Mem.").

In a written decision dated December 14, 2015, the ALJ found that Ortiz was not disabled.  R.

18-28.  The Appeals Council denied review, making the ALJ's decision the final decision of the

Commissioner.  R. 1-7.  Ortiz filed this action on June 9, 2017, seeking review of that final

decision.  See Complaint, filed June 9, 2017 (Docket # 2).

B.  The Hearing Before the ALJ

Ortiz was represented by an attorney at the hearing before the ALJ.  R. 35.  Before

calling any witnesses to testify, the ALJ reviewed the record which, among other things,

indicated that Ortiz was 55 at the time of the hearing, that he was diagnosed with diabetes

mellitus with polyneuropathy and paresthesias, that he had a benign tremor, and that he claimed

leg pain.  R. 36-37.

Ortiz testified that he became disabled on June 30, 2013.  R. 41.  His right thigh was

"always in pain," which he described as being between an eight and ten on a ten point scale, with

ten being the most amount of pain.  R. 48.  Ortiz also had a tremor and numbness in his right

hand, which shakes "once a day" or "once in a while," though Ortiz said that "[i]t might shake

here because I get nervous."  R. 49.  The ALJ observed that he "didn't see it moving now."  Id.

Ortiz said that he could type and write, and that he could also button his shirt and tie his shoes,

but that he had to take his time in so doing.  Id.

Ortiz stated that he drank alcohol "maybe once a year" and did not take drugs except for

medicine, which included tramadol for pain, as well as claritin, glipizide, and "lantis."  R. 42-43.

Ortiz said that the tramadol "doesn't do that well" to control the pain in his right thigh.  R. 48-

49.  Ortiz stated that his blood sugar was controlled, although he tested it only every two or three

days.  R. 43.

Concerning daily activities, Ortiz testified that he lived on the first floor of an apartment

building with his 77 year old mother. R. 38-39. Oritz testified that he shopped for groceries in the neighborhood for his mother because "I'm the only guy she's got." R. 39-40. Ortiz used the bus to visit his doctors, but did not use trains because he could not go up or down the staircases. R. 41. Ortiz stated that although he had a driver's license, he had not driven an automobile in seven or eight years. R. 41-42.

Concerning prior work history, Oritz testified that he stopped working in 2013 and received unemployment benefits for about "six or nine months" after that, and also received welfare benefits. R. 40. Before that, Ortiz said that he worked as a mail clerk for a bank, which consisted of carrying mail packages by hand to different locations on a single floor in the building. R. 43-44. Before that, Ortiz worked full time for a jewelry company in 2009, where he packed items weighing up to forty pounds into boxes while standing. R. 45-46. Before working for the jewelry company, Ortiz worked as a mail clerk for a company called "Paychecks" in 2007. R. 46. This mail clerk position was different than the one at the bank because at Paychecks, the packages were heavier (sometimes up to fifty or one hundred pounds) and Ortiz used a cart. R. 46-47. Before that, Ortiz worked as a typist for AT&T for four and one half years, where he performed "data processing into a computer system," but was ultimately laid off from that job. R. 47-48. Ortiz never graduated high school and did not receive a general equivalency diploma, though he finished 11th grade. R. 42.

Ortiz testified that he could not work for the bank as a mail clerk anymore because he could not sit or stand for too long without alternating, and that he could not work as a mail clerk for the jewelry company because it required him to walk all day, which he could not do. R. 49-50. Ortiz also testified that he could not work as a data processor because he could not sit for the length of time that job required. R. 50.

3

Bernard Gussoff, M.D., a medical expert witness, testified. Dr. Gussoff was chairman of the Department of Medicine at Jamaica Hospital for 12 years and worked at Maimonides Medical Center for 23 years in the specialties of medicine, hematology, and oncology. R. 50-51. Referring to evidence in the record, including treatment notes from Ortiz's doctors, Dr. Gussoff found that Ortiz had "diabetes mellitus with a sensory polyneuropathy, not a motor," which caused "paresthesia neuralgia," or altered sensation in his extremities. R. 51-52. Dr. Gussoff opined that Ortiz had "mild osteoarthritis" causing pain in his right hip, though Dr. Gussoff had no x-rays to document that. R. 52. Dr. Gussoff agreed with the ALJ that Ortiz had a tremor that had been described as intermittent and benign. R. 53. Based on this, Dr. Gussoff found that Ortiz did not meet or equal any listed impairment under "9.08, 1.02a." Id. With respect to Ortiz's residual functional capacity ("RFC"), Dr. Gussoff opined that Ortiz was still capable of sedentary work and lifting and carrying up to ten or twenty pounds occasionally, standing or sitting for up to six hours, and standing or walking intermittently during the day for two hours. R. 53-54. Dr. Gussoff based this determination in part on the fact that Ortiz "shops, which means that he has to either walk, walk to the shopping center, walk down the aisles, pick items of various weights into his basket and carry them back to the house." R. 53. Dr. Gussoff also found only mild manipulative limitations and no reaching limitations because although Ortiz indicated that he had numbness in his hands, he was able to eat and type, indicating good sensory contact. R. 54.

The ALJ called Helene Feldman, a vocational expert witness ("VE"). Id. Feldman has a master's degree in "rehab counseling," is a certified employee assistance practitioner, is licensed in New York State as a mental health counselor, and had been working "in the field" for over 25 years. R. 55. The ALJ told the VE that Ortiz had held three jobs before — mail clerk, packager

in a jewelry business, and data processor.  Id.  The VE classified each of these jobs using the

Dictionary of Occupational Titles ("DOT"), and described Ortiz's prior work as a mail clerk as

requiring "light strength," his prior work with the jewelry business as a packer as requiring

"medium strength," and his prior work as a data processor as requiring "sedentary strength."  Id.

The VE noted that Ortiz had no transferrable skills.  Id.

The ALJ asked the VE to consider a hypothetical individual with a sedentary RFC who

was also limited to "no climbing, no balancing, no crawling, occasional bending, stooping,

kneeling and crouching, no driving, no heavy machinery, no unprotected heights, [and]

occasional uneven surfaces."  Id.  The VE testified that such a person would be able to perform

Ortiz's prior work as a data processor, as well as additional jobs which existed in substantial

numbers in the national economy, including dowel inspector, and dial marker.  R. 55-56.  The

VE testified, however, that if this person were off-task more than five to ten percent of the day,

or needed to miss more than three days a month, then there would be no work that this person

could perform.  Id.

C.  Medical Evidence

The medical evidence in the record is summarized in the Commissioner's brief.  See Def.

Mem. at 2-5.  We discuss the evidence relevant to our conclusions in Section III below.

D.  The ALJ's Decision

The ALJ denied Ortiz's application for benefits on December 14, 2015.  R. 18.  The ALJ

found that Ortiz met the insured status requirements of the Act through March 31, 2017, and that

he had not engaged in substantial gainful activity since June 30, 2013, the alleged onset date.  R.

23.  The ALJ found that Ortiz had the following severe impairments: "diabetes mellitus with

sensory polyneuropathy; history of mild osteoarthritis of the hip; and obesity."  Id.  He found,

however, that Ortiz had no medically determinable psychological impairment. R. 24. The ALJ also noted that although testing performed in February 2014 by one of Ortiz's treating physicians, Dr. Yelena Lindenbaum, indicated that Ortiz had mild carpal tunnel syndrome and mild L3 radiculopathy, earlier testing and later studies and treatment notations did not document these findings. R. 24, 26, 524. The ALJ found that Dr. Lindenbaum's findings were evidence of an "acute process" and that Ortiz "d[id] not have a severe medically determinable impairment associated with carpal tunnel syndrome or lumbar radiculopathy." R. 24. Finally, the ALJ found that evidence of Ortiz's benign tremor was not regularly corroborated by other physicians and thus was not associated with a severe impairment. Id.

The ALJ then determined that none of Ortiz's severe impairments met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. The ALJ specifically considered Listing 9.00B5, which includes the endocrine disorders of "[d]iabetes mellitus and other pancreatic gland disorders," with specific reference to "sensory neuropathies listed under 11.00." R. 24-25. In so doing, the ALJ noted that Dr. Gussoff "was of the opinion that the claimant's impairments did not meet or medically equal the severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1," and that the ALJ found this conclusion to be "well reasoned and supported by the credible evidence of record." R. 24.

Turning next to Ortiz's RFC, the ALJ determined that Ortiz could "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for no climbing, balancing, or crawling; occasional bending, stooping, kneeling, and crouching; no operation of heavy machinery; no unprotected heights; and, occasional exposure to uneven surfaces." R. 25. In making this determination, the ALJ reviewed the evidence and medical opinions of record, as described below.

First, the ALJ noted that Dr. Gussoff's testimony at the hearing was "well reasoned and supported by the credible evidence of record." R. 26. In this testimony, Dr. Gussoff noted that Ortiz had diabetes mellitus with sensory polyneuropathy, which was consistent with Ortiz's loss of sensation in his extremities. R. 25. However, Dr. Gussoff noted that there was "no evidence of motor neuropathy which was considered more severe." Id. Dr. Gussoff also found possible mild osteoarthritis in Ortiz's right hip, though that condition was not documented by x-ray. Id. Dr. Gussoff correspondingly found that Ortiz retained the RFC "to perform sedentary work and possibly light work." Id.

The ALJ also reviewed treatment notes from Dr. John Minutillo, one of Ortiz's treating physicians. R. 26, 31-32. The ALJ found significant that on July 26, 2013, after Ortiz had been hospitalized for pneumonia and respiratory distress in June of 2013, Dr. Minutillo opined that Ortiz "could return to [work] the next week." R. 26. Moreover, Dr. Minutillo's later treatment notes indicated that Ortiz's weight was stable and that Ortiz felt "well" other than claims of numbness and pain in his right thigh. Id. Dr. Minutillo's later treatment notes failed to indicate that Ortiz was limited in his ability to perform sedentary work, and that although treatment notes from September of 2015 indicated that Ortiz complained of pain and shortness of breath with exertion, his overall physical exam was "largely within normal limits" and he reported that he was "feeling well and working." Id. Finally, the ALJ noted that although physical therapy notes from Mt. Sinai indicated that Ortiz was using a cane that he held in the wrong hand, Dr. Minutillo's notes did not indicate that Ortiz ambulated with a cane. Id. The record contained no opinion from Dr. Minutillo regarding Ortiz's RFC.

The ALJ also noted that Ortiz was treated briefly by Dr. Mohammed Fahad Khan, although Ortiz did not complete his treatment plan after complaining of a lack of significant

improvement.  R. 26, 32, 528.  The record contained no opinion from Dr. Khan regarding Ortiz's RFC.

In compiling Ortiz's RFC, the ALJ weighed the opinions of one treating source and one consulting source.  R. 25-27.  The ALJ gave "some weight" to the opinion of consulting physician Dr. John Fkiaras, who found that Ortiz had significant functional limitations in his ability to perform sedentary work due to the pain in his right thigh, as well as his other conditions.  R. 27, 31.  The ALJ found that these limitations were inconsistent with the testimony provided by Dr. Gussoff, as well as Dr. Minutillo's treatment notes described above. R. 27.

Meanwhile, the ALJ gave "little weight" to opinions from April and May 2014 that were provided by plaintiff's treating physician, Dr. Lindenbaum, who found that Ortiz suffered "severe leg pain and sensory loss in the right thigh which interferes with walking, sitting, or standing for prolonged periods of time; and limits [Ortiz's] ability to take care of his daily needs."  R. 26.  In so doing, the ALJ noted that Dr. Lindenbaum treated Ortiz from October 2013 through March 2014, that "EMG and other testing disclosed only mild sensory polyneuropathy, and mild meralgia paresthetica," that "[p]hysical and neurological testing showed only mild positive findings; and, the claimant had a normal gait."  Id.  Morever, the ALJ noted that Dr. Lindenbaum's findings were "made less than 12 months from the alleged disability onset date" and that Ortiz later reported in July 2014 "that he had an increase in symptoms with walking more than 5 blocks, standing more than 15 minutes, going up one flight of stairs, and sitting for more than 2 or 3 hours."  Id.  Finally, the ALJ noted that Ortiz reported living alone and performing activities of daily living independently with pain.  Id.

As to Ortiz's credibility, the ALJ found that Ortiz's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." R. 25. The ALJ noted that Ortiz testified that he was unable to perform past relevant work due to the pain in his right thigh, that his pain was an eight to ten on a scale of one to ten, that medication was unsuccessful in alleviating this pain, and that he had numbness in his hands. Id. The ALJ found, however, that the credible evidence of record did not support the conclusion that Ortiz was significantly limited in his ability to perform sedentary work. R. 27. In making this finding, the ALJ noted that Ortiz testified that he remained capable of performing normal activities of daily living, that Dr. Minutillo's recent notations indicated that Ortiz was working, and that other descriptions of Ortiz's ability to perform work related functions, such as notes from Mt. Sinai, indicated that Ortiz's description of his abilities and functions were consistent with sedentary work. Id. Accordingly, the ALJ found that Ortiz retained the RFC as described above.

After determining Ortiz's RFC, the ALJ turned to the question of whether Ortiz could perform his past work. Id. Relying on the testimony of the VE, the ALJ found that a person of Ortiz's RFC could perform Ortiz's past work as a data processor "as actually and generally performed." Id. Because the ALJ found that Ortiz could perform his past work, the ALJ did not consider whether there was other work in the national economy that Ortiz could perform, despite his limited RFC. Accordingly, the ALJ found Ortiz not disabled under the Act and denied his application for benefits. R. 27-28.

II. GOVERNING LAW

A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations

and internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision."  Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).  Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled."  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

      B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. part 404, subpart P, appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Ortiz moves to remand on the grounds that: (I) the ALJ failed to properly assess Ortiz's credibility, Pl. Mem. at 10; (ii) the ALJ failed to properly explain the weight assigned to each medical opinion in the record, id. at 10; (iii) the ALJ failed to develop the record by obtaining "detailed medical source statements from the treating and examining doctors regarding the Plaintiff's ability to perform relevant work-related functions," id. at 10; and (iv) the ALJ failed to indicate what evidence supported his determination that Ortiz could perform sedentary work, id. at 10-11. We note that we are hampered in our ability to address these arguments because Ortiz cites to virtually no facts in the argument section of his brief and thus does little other than recite generic arguments and legal propositions that could apply in almost any social security appeal.

A. Credibility

"It is the function of the [Commissioner], not [the reviewing court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983) (citations omitted). Thus, the ALJ, "after weighing objective medical evidence, the claimant's demeanor, and other indicia of credibility . . . may decide to discredit the claimant's subjective estimation of the degree of impairment." Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999) (summarizing and citing with approval a holding in Pascariello v. Heckler, 621 F. Supp. 1032, 1036 (S.D.N.Y. 1985)). Nonetheless, when discounting a claimant's credibility regarding his RFC, regulations impose some burden on the ALJ to explain his decision. As the Second Circuit has stated:

> [w]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of . . . limitations into account, 20 C.F.R. § 416.929; see McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d Cir. 1980), but is not

required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.  Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

Genier, 606 F.3d at 49.  To evaluate a claimant's assertion of a limitation, the ALJ must engage in a two-step process:

> [a]t the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  20 C.F.R. § 404.1529(b). . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record.  Id.  The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in [its] administrative proceedings."  20 C.F.R. § 404.1512(b)(3); see also 20 C.F.R. § 404.1529(a); S.S.R. 96-7p.

Id. (alterations in original).

The SSA has issued regulations relating to reports of pain or other symptoms affecting the ability to work by a claimant for disability benefits.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  These regulations provide, inter alia, that the SSA "will not reject [a claimant's] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work . . . solely because the available objective medical evidence does not substantiate [his] statements."  20 C.F.R. § 416.929(c)(2) (emphasis added); accord 20 C.F.R. § 404.1529(c)(2).  The regulations also provide that the SSA "will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [his] statements and the rest of the evidence."  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

Where an ALJ rejects witness testimony as not credible, the basis for the finding "must []

14

be set forth with sufficient specificity to permit intelligible plenary review of the record."

Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing Carroll, 705

F.2d at 643); accord Puente v. Comm'r of Soc. Sec., 130 F. Supp. 3d 881, 894 (S.D.N.Y. 2015).

The ALJ must make this determination "in light of medical findings and other evidence[]

regarding the true extent of the pain alleged by the claimant." Mimms v. Heckler, 750 F.2d 180,

186 (2d Cir. 1984) (citation and internal quotation marks omitted). However, where an ALJ

gives specific reasons for finding the claimant not credible, the ALJ's credibility determination

"is generally entitled to deference on appeal." Selian, 708 F.3d at 420 (citation omitted). Thus,

"[i]f the [Commissioner's] findings are supported by substantial evidence, the court must uphold

the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y, Dep't of

Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted); see also 42 U.S.C.

§ 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").

  The ALJ's findings here regarding credibility were supported by substantial evidence.

As to the first step, the ALJ found that Ortiz's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms." R. 25  At the second step, however, the

ALJ found that Ortiz's "statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely credible." Id.  In so finding, the ALJ noted that "[c]linical

findings are largely mild and not consistent with the types of limitations described by the

claimant in his testimony." R. 27.  This finding, if considered on its own, would not constitute

substantial evidence to uphold the ALJ's credibility determination.  20 C.F.R. § 416.929(c)(2)

(an ALJ may "not reject [a claimant's] statements about the intensity and persistence of [his]

pain or other symptoms or about the effect [his] symptoms have on [his] ability to work . . .

15

solely because the available objective medical evidence does not substantiate [his] statements.");
accord 20 C.F.R. § 404.1529(c)(2).

However, the ALJ provided other bases for finding Ortiz's subjective complaints of pain
not credible. For example, the ALJ noted that "the claimant indicated that he remains capable of
performing normal activities of daily living." R. 27. The Second Circuit has held that activities
of daily living may constitute a basis for finding a claimant's testimony incredible. Poupore, 566
F.3d at 307 (noting that "the ALJ properly found that [claimant's] testimony about his
limitations was not fully credible" based in part on the fact that the claimant "was able to care
for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed
dishes, that he occasionally drove, and that he watched television, read, and used the
computer."); Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980) (a claimant's "testimony did not
preclude the possibility that she could perform gainful activity of a light, sedentary nature"
where the appellant indicated that "despite her pains and shortness of breath, she can cook, sew,
wash and shop, so long as she does these chores slowly and takes an afternoon rest.").

Here, Ortiz testified that he performed grocery shopping for his mother in the
neighborhood. R. 39-40. Moreover, a function report submitted by Ortiz indicated that, in
addition to grocery shopping three to four times per week, Ortiz occasionally cooked, cleaned,
dusted, and did housework, though he had to take his time in completing these tasks due to pain
in his right thigh. R. 181, 183-86. Hospital records from July 2014 from Mt. Sinai Center for
Advanced Medicine, which were cited by the ALJ, R. 27, also indicated that Ortiz "performs
basic [activities of daily living] independently with pain[ ]and performs instrumental [activities
of daily living] independently with pain," R. 368. As such, the ALJ's findings that Ortiz
performed activities of daily living, and that such activities undermined his assertion that his

16

pain prevented him from doing even sedentary work, were supported by substantial evidence.

Additionally, the ALJ noted that Ortiz indicated to one of his doctors that he was working. R. 27. This assertion is contained in treatment notes signed by Dr. Minutillo from September 2015. R. 463, 466. The fact that Ortiz was working at that time is at odds with Ortiz's assertion that his pain kept him from working. R. 48-50.

As discussed above, the ALJ's credibility determination was based on more than the ALJ's assertion that plaintiff's testimony regarding his pain was not supported by the objective medical evidence of record. Because the ALJ's determination regarding Ortiz's credibility was supported by substantial evidence, Ortiz's argument that the ALJ's credibility analysis was inadequate is rejected.

B. Weight of the Opinions and Duty to Develop the Record

Ortiz argues that the ALJ failed to provide a sufficient explanation, using the factors in 20 C.F.R. §§ 404.1527(c), 416.927(c), for the weight given to the medical opinions in the record. Pl. Mem. at 10.[2] Ortiz also argues that the ALJ failed to fulfill his duty to develop the record by contacting all of Ortiz's treating physicians. Pl. Mem. at 10-12.

When an ALJ assesses a claimant's alleged disability, an ALJ must develop the claimant's medical history "for at least the 12 months preceding the month in which" the claimant filed his application. 20 C.F.R. §§ 404.1512(d), 416.912(d); see also Sims v. Apfel, 530 U.S. 103, 111 (2000) (ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits") (citation omitted); Shaw, 221 F.3d at 131 ("The ALJ has

---

[2] Ortiz's brief refers to 20 C.F.R. § 404.1527(d). However, the factors to which Ortiz refers are contained in 20 C.F.R. § 404.1527(c) in the regulations that were applicable at the time Ortiz filed his claim.

an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings . . . .").  The governing statute provides that the ALJ "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make" the disability determination.  42 U.S.C. § 423(d)(5)(B); accord 20 C.F.R. §§ 404.1512(d), 416.912(d).  "Nevertheless, the Second Circuit has held that it is not per se error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician."  Sanchez v. Colvin, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (citing Tankisi v. Comm'r of Soc. Sec., 52 F. App'x 29, 33-34 (2d Cir. 2013) (summary order) and Pellam v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order)).  This is particularly true where "the ALJ [] had all of the treatment notes from [the claimant's] treating physicians," Pellam, 508 F. App'x at 90, and where the rest of the record, "contains sufficient evidence from which an ALJ can assess the petitioner's [RFC]," Tankisi, 521 F. App'x at 33-34 (citations omitted).  By contrast, where the medical record is not voluminous and contains no assessment of the claimant's limitations from a treating physician, further development may be required.  See Sanchez, 2015 WL 736102, at *6.  The ALJ's duty to develop the record remains the same regardless of whether the claimant is represented by counsel.  Tejada, 167 F.3d at 774 (citing Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)).

"[I]nextricably linked to the duty to develop the record," Lacava v. Astrue, 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012), is the so-called "treating physician rule," under which an ALJ must give "more weight to opinions" of certain treating sources when determining if the claimant is disabled, see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The rule directs the agency to give "controlling weight" to a treating physician's medical opinion as to the nature and

severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ does not give controlling weight to a treating physician's opinion, the ALJ must provide "good reasons" for the weight given to that opinion. Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004) (per curiam) (internal quotation marks omitted) (citing Schaal, 134 F.3d at 505). The regulations make clear that the agency "will always give good reasons . . . for the weight [they] give [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Case law holds that "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal, 134 F.3d at 505).

When an ALJ does not grant a medical opinion controlling weight under 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), then the regulations instruct the ALJ to apply a number of factors in determining what weight to grant that opinion. These factors include the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion with other relevant evidence, including "medical signs and laboratory findings," the "consistency" of the opinion "with the record as a whole," whether the opining physician is a specialist, and other relevant factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Here, the ALJ had no further duty to contact or receive opinions from any of Ortiz's treating physicians. The record contains treatment notes from all of Ortiz's treating sources, including Drs. Minutillo, R. 216-91, 386-523, Lindenbaum, R. 292-315, 524-37, and Khan, R. 538-50, and the ALJ discussed all of these treatment notes, R. 23-27. The record also contained

19

the treatment notes of Ortiz's treating podiatrist, Dr. Isaac Tabari, <u>see</u> R. 316-22, 551-63, although the ALJ did not make reference to these notes in his opinion. While only Dr. Lindenbaum rendered an opinion that was weighed by the ALJ, R. 26, 524-37, the ALJ also referred to Drs. Minutillo's and Khan's treatment notes in his assessment of Ortiz's RFC, R. 25-27. Tellingly, Ortiz does not point to any gaps in the medical record. <u>See</u> Pl. Mem. at 10-12. Given the presence of all relevant treatment notes, and the absence of any gaps in the record, the ALJ was not required to seek additional opinions from Ortiz's treating sources notwithstanding the fact that only one such source rendered an opinion. <u>See</u> <u>Tankisi</u>, 521 F. App'x at 34 ("remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's [RFC].").

Similarly, Ortiz's argument that the ALJ failed to properly weigh the medical opinions in the record pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c) is without merit. The ALJ gave "little weight" to Dr. Lindenbaum's opinion that Ortiz "suffers severe leg pain and sensory loss in the right thigh which interferes with walking, sitting, or standing for prolonged periods of time; and limits his ability to take care of his daily needs." R. 26. Of course, Dr. Lindenbaum was Ortiz's treating physician, and her opinion was due controlling weight absent "good reasons." 20 C.F.R. § 404.1527(c)(2). The ALJ provided such reasons, however, by noting that "EMG and other testing disclosed only mild sensory polyneuropathy, and mild meralgia paresthetica. Physical and neurological testing showed only mild positive findings; and, the claimant had a normal gait." R. 26. These findings are contained in Dr. Lindenbaum's own treatment notes, as well as those of Dr. Minutillo, R. 299, 301, 306, 428, 437, 440, 443, 446, 465, and are inconsistent with the notion that Ortiz's pain interfered with his normal activities,

including walking. Similarly, the ALJ noted that Ortiz "reported that he lived alone and performed [activities of daily living] and instrumental [activities of daily living] independently with pain." R. 26, 368. These findings correspond to the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c), including the opinion's consistency with the record as a whole, and the extent to which the opinion is supported by medical signs and laboratory findings. Thus, the ALJ properly applied 20 C.F.R. §§ 404.1527(c), 416.927(c) in weighing Dr. Lindenbaum's opinion.

Additionally, the ALJ properly applied the 20 C.F.R. §§ 404.1527, 416.927 factors to assign a weight to Dr. Fkiaras's opinion. Dr. Fkiaras was a consulting examiner who did not treat Ortiz. R. 27, 347-58. As such, his opinion was not presumptively entitled to controlling weight. Cf. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ noted that Dr. Fkiaras's opinion, insofar as it assessed "significant functional [] limitations associated with right thigh pain and other conditions," was contradicted by the medical expert's testimony and treatment notes of Dr. Minutillo. R. 27. In particular, Dr. Minutillo's treatment notes from September of 2015 indicated that Ortiz's physical exam produced results that were "largely within normal limits," and that Ortiz reported that he was "feeling well and working." R. 26, 463, 466. Similarly, the ALJ indicated that prior treatment notes from Dr. Minutillo failed to indicate any limitations in functioning, and that Dr. Minutillo did not describe medical findings or complaints indicating that Ortiz was limited in his ability to perform sedentary work. R. 26, 217. In other words, the ALJ relied on consistency with the record as a whole, a factor contained in 20 C.F.R. § 404.1527(c), in providing only "some weight" to Dr. Fkiaras's opinion. The ALJ thus appropriately applied this provision in weighing Dr. Fkiaras's opinion.

We note that while the ALJ did not apply each factor in 20 C.F.R. §§ 404.1527(c)(2),

21

416.927(c)(2) the ALJ was under no obligation to do so.  <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70

(2d Cir. 2013) (summary order) ("[Claimant] challenges the ALJ's failure to review explicitly

each factor provided in 20 C.F.R. § 404.1527(c).  We require no such slavish recitation of each

and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citation

omitted).  Because the ALJ's application of 20 C.F.R. §§ 404.1527(c), 416.927(c) was sufficient

to explain the weight given to the opinions of Drs. Lindenbaum and Fkiaras, we reject the

argument that the ALJ failed to apply the appropriate factors in weighing the opinion evidence.

     C.  <u>Substantial Evidence Supporting RFC</u>

     Ortiz asserts that substantial evidence did not support the ALJ's RFC determination.

Ortiz argues that the ALJ "failed to explain how Plaintiff's described daily activities translated

into a capacity to perform sedentary work."  Pl. Mem. at 11.  Had the ALJ done so, Ortiz argues

the ALJ would have found "the primary and specialist treatment source treatment notes,

diagnostic evaluations and assessments evidence the presence of impairments, and reflected

limitations to levels below the residual capacity for sustained and competitive work at even the

sedentary level."  <u>Id.</u> at 10.

     "RFC is not the <u>least</u> an individual can do despite his or her limitations or restrictions, but

the <u>most</u>."  SSR 96-8P, 1996 WL 374184 (July 2, 1996) (emphasis in original); <u>accord</u> 20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).  In determining a claimant's RFC, the regulations state that an

ALJ will consider "all the relevant evidence in [a claimant's] case record."  20 C.F.R.

§§ 404.1545(a)(1), 416.945(a)(1).

     The ALJ here found that Ortiz had the RFC to "perform sedentary work . . . except for no

climbing, balancing, or crawling; occasional bending, stooping, kneeling, and crouching; no

operation of heavy machinery; no unprotected heights; and, occasional exposure to uneven

surfaces." R. 25. Under the regulations, sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404 .1567(a), 416.967(a); accord Halloran, 362 F.3d at 31 n.3; Patterson v. Colvin, 24 F. Supp. 3d 356, 369 (S.D.N.Y. 2014).

Here, substantial evidence existed to support the ALJ's determination that Ortiz could perform sedentary work with the additional limitations described above. First, the ALJ considered the testimony of non-examining medical expert Dr. Gussoff. R. 25-26. Under the regulations, the ALJ was permitted to consider the opinion of Dr. Gussoff in making a disability determination. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) ("Administrative law judges may also ask for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equals the requirements of any impairment listed in appendix 1."). Moreover, the opinion of a non-examining medical expert such as Dr. Gussoff's may be considered substantial evidence if consistent with the record as a whole. See Ellett v. Comm'r of Soc. Sec., 2011 WL 1204921, at *9 (N.D.N.Y. Mar. 29, 2011) ("Although [t]he Social Security Regulations do not contemplate that the opinions of a non-examining physician be treated as substantial evidence, these opinions may constitute substantial evidence where they are in turn supported by substantial evidence in the record.") (citations and internal quotation marks omitted); Leach ex rel. Murray v. Barnhart, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (noting that "State agency physicians [that did not examine the claimant] are qualified as experts in the evaluation of medical issues in disability claims. As such their

opinions may constitute substantial evidence if they are consistent with the record as a whole."); see also Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993) (noting that the regulations "permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record.") (citations omitted).

Dr. Gussoff reviewed the evidence of record and found that Ortiz had "diabetes mellitus with a sensory polyneuropathy," which altered Ortiz's sensation in his extremities, as well as "mild osteoarthritis." R. 25, 51-52. Based on his review of the record, as well as Ortiz's testimony regarding daily activities, Dr. Gussoff testified that Ortiz remained capable of lifting and occasionally carrying up to ten, and possibly twenty, pounds, sitting up to six hours a day, and standing or walking intermittently for two hours a day. R. 53-54. The ALJ found Dr. Gussoff's opinion "well reasoned and supported by the credible evidence of record." R. 26.

This opinion was supported by substantial evidence. The ALJ referred to the contemporaneous treatment records of Dr. Minutillo, one of Ortiz's treating sources. Id. In so doing, the ALJ noted that Dr. Minutillo did not indicate that Ortiz had limitations in functioning, and generally did not describe medical findings or complaints indicating that Ortiz lacked the capacity to perform at least sedentary work. Id. Similarly, later treatment notes from Dr. Minutillo indicated that Ortiz reported "feeling well and working." R. 26, 463, 466. As such, Dr. Minutillo's treatment notes, as referenced by the ALJ, are consistent with Dr. Gussoff's finding that Ortiz's impairments were not so severe as to render him incapable of sedentary work.

Similarly, Dr. Gussoff's statement that Ortiz maintained sufficient RFC to perform sedentary work was supported by the record evidence indicating that Ortiz independently carried out his own activities of daily living. At the hearing, Ortiz testified that he went grocery

shopping in his neighborhood on his mother's behalf. R. 39-40. Likewise, in a function report, Ortiz indicated that he occasionally cooked for himself, and also cleaned around the house and performed other housework, though he had to "take [his] time cause the pain [he's] having in [his] []right thigh." R. 183-84. This report also confirmed that Ortiz shopped for his mother three to four times a week, and that it took him between ten and thirty minutes. R. 185. Finally, a report from Mt. Sinai Center for Advanced Medicine also indicated that Ortiz performed his own activities of daily living, albeit with pain. R. 368. These activities are consistent with the opinion provided by Dr. Gussoff, as well as the ALJ's ultimate RFC determination.

Finally, we note that in granting "some weight" to the opinion of consultative examiner Dr. Fkiaras, R. 27, the ALJ adopted many of the limitations that Dr. Fiarkas noted in his report. Dr. Fkiaras's medical source statement indicated that

> [t]he claimant is restricted from any lifting, carrying, pushing, pulling, squatting, kneeling, crouching, and bending. The claimant has a moderate limitation sitting, standing, and walking. The claimant is restricted from activities which require use of the right lower extremity. The claimant has a moderate to severe limitation climbing stairs. The claimant is restricted from activities which require exposure to unprotected heights. The claimant is restricted from driving and operating heavy machinery.

R. 350. Similarly, the ALJ's assessment of Ortiz's RFC found limitations in many of the same areas in which Dr. Fkiaras noted limitations, such as restrictions from unprotected heights, the operation of heavy machinery, and some limitations in bending, stooping, kneeling and crouching, albeit not to the extent suggested by Dr. Fkiaras. R. 25. To the extent that the ALJ's RFC differed from Dr. Fkiaras's medical source statement — most notably, with respect to Ortiz's ability to lift items weighing up to ten pounds, as required for sedentary work — his determination was supported by the opinion of Dr. Gussoff, which in turn was consistent with the record evidence of Ortiz's activities of daily living for the reasons stated above.

In sum, we find that the ALJ's RFC determination that Ortiz could perform sedentary

work, subject to additional limitations, was supported by substantial evidence.[3]

## IV. CONCLUSION

For the foregoing reasons, Ortiz's motion for judgment on the pleadings (Docket # 16) is

denied, the Commissioner's motion for judgment on the pleadings (Docket # 13) is granted, and

the case is dismissed.

SO ORDERED.

Dated: New York, New York
      May 7, 2018

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[3] We note that the ALJ made two erroneous references to the record. First, in support of
his RFC determination, the ALJ noted that on July 26, 2013, after Ortiz had been hospitalized for
pneumonia and respiratory distress in June 2013, Dr. Minutillo opined that Ortiz "could return to
[work] the next week." R. 26. This statement has little value as to the RFC determination given
that Ortiz's hospitalization was for an illness unrelated to thigh pain. Second, the ALJ at one
point states that despite records from Mt. Sinai indicating that Ortiz used a cane, Dr. Minutillo's
records failed to describe Ortiz as "ambulating with a cane." Id. However, on at least one
occasion, Dr. Minutillo's records did in fact note that Ortiz "uses [a] cane." R. 468.
Notwithstanding these minor errors, the ALJ's determination was supported by substantial
evidence.